UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
=========================================X
JERRY HOBSON and FRANK DUSEK,

                      Plaintiffs,                        **COMPLAINT**

   -against-

ZEP, INC.,

                      Defendant.
=========================================X

Plaintiffs JERRY HOBSON and FRANK DUSEK, by their attorneys JOSEPH LANNI and THE JACOB D. FUCHSBERG LAW FIRM, L.L.P., as and for their Verified Complaint, respectfully alleges, upon information and belief, as follows:

## **PARTIES**

1. At all times subsequently referenced, plaintiffs JERRY HOBSON was and is a resident of the County of Suffolk and the State of New York.

2. At all times subsequently referenced, plaintiffs FRANK DUSEK was and is a resident of the County of Suffolk and the State of New York.

3. At all times subsequently referenced, plaintiff JERRY HOBSON[1] resides at 39 Pine Court, Riverhead, NY 11901.

4. At all times subsequently referenced, plaintiff FRANK DUSEK[2] resides at 29 Creston Terrace, Northport, NY 11768.

5. At all times subsequently referenced, defendant ZEP, INC.,[3] was and is a business corporation organized and existing under the laws of the State of Delaware.

---

[1] JERRY HOBSON is variously referred to as MR. HOBSON and HOBSON throughout this Complaint.
[2] FRANK DUSEK is variously referred to as MR. DUSEK and DUSEK throughout this Complaint.

1

6. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation with its principal place of business situated in the State of Georgia at 3330 Cumberland Boulevard, Suite 700, Atlanta, GA 30339.

7. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation that conducted business operations in the State of New York.

8. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation that transacted business within the State of New York.

9. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation that derived substantial revenue from conducting business operations, activities and transactions in the State of New York.

10. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation that derived substantial revenue from goods used or consumed and/or services rendered in the State of New York.

11. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation that expected or should reasonably have expected that its acts, omissions and conduct had consequences in the State of New York.

12. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation that derived substantial revenue from interstate or international commerce in the regular course of its business operations, activities and transactions within the State of New York.

13. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation that was and is the manufacturer, marketer, distributor, and seller of industrial and

---

[3] ZEP, INC., is variously referred to as ZEP throughout this Complaint.

commercial cleaning solvents primarily containing a toxic chemical known as trichloroethylene (i.e., "TCE") as an active ingredient.

14. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation that manufactured, marketed, distributed, and sold industrial and commercial cleaning solvents containing trichloroethylene (i.e., "TCE") to the operating contractors of Brookhaven National Laboratory located in Upton, NY.

## JURISDICTION

15. The jurisdiction of this Court is premised upon the diversity of citizenship of the parties as the plaintiffs' are residents, domiciles and citizens of the State of New York and defendant's principal and actual places of business are in the State of Georgia and its place of incorporation is in the State of Delaware.

16. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by *28 U.S.C. §1332* (*i.e.:* $75,000.00).

## VENUE

17. The venue of this action is premised upon the plaintiffs' residence and the transactions, acts, omissions, and conduct by the defendants that form, in pertinent part, the basis of the causes of action in plaintiff's Complaint having occurred in the County of Suffolk, State of New York, and within the Eastern District of New York.

## JURY DEMAND

18. Plaintiffs demand trial by jury of all issues presented in this action that are triable by a jury as of right pursuant to the applicable statutes and court rules.

## INTRODUCTION

19. Plaintiffs JERRY HOBSON and FRANK DUSEK bring this action for injuries resulting from TCE exposure that occurred while working at Brookhaven National Laboratory in Upton, NY. The plaintiffs used or were exposed to TCE cleaning products and solvents that were manufactured, marketed, distributed and sold by ZEP. Mr. HOBSON and Mr. DUSEK both used ZEP TCE products over many years in the course of their BNL employment duties. Mr. HOBSON was diagnosed with kidney failure in 2015 and underwent a kidney transplant. Mr. DUSEK was diagnosed with kidney cancer in 2019 and underwent a partial nephrectomy.

## FACTS COMMON TO ALL CAUSES OF ACTION

20. The events, actions, conduct, activities, omissions, transactions, occurrences, incidents and circumstances at issue in this matter include, but are not limited to, the following facts:

### Brookhaven National Laboratory

21. Brookhaven National Laboratory (BNL) occupies an approximately 5,300-acre site in Upton, NY, in Suffolk County on Long Island.

22. BNL has existed since 1947.

23. BNL is owned by the U.S. Department of Energy (USDOE).

24. USDOE has provided for the operation of BNL by annual "operating contract" with a private "operating contractor" since 1947.

25. The BNL operating contractor was Associated Universities, Inc., (AUI) during the period 1947 – 1998, and Brookhaven Science Associates, LLP, (BSA) during the period 1998 – present.

26. Among the many toxic chemicals and substances known to be hazardous and ultra-hazardous to human health, safety and welfare that were used by AUI and BSA at BNL in the course of

its research, work, operations, activities, services and functions on the site was trichloroethylene (TCE).

## BNL's TCE Use, Contamination & Exposure Risks

27. AUI and BSA extensively used TCE at BNL, in pertinent part, as a solvent, degreaser, cleaning agent and disinfecting agent.

28. AUI and BSA extensively used TCE at BNL in many different activities including, but not limited to, the following: machining; metalworking; metal fabricating; milling; supercomputer operations; computer network maintenance, repair and reconfiguration; electrical equipment maintenance and repair; telephone and telecommunications maintenance and repair; information technology equipment maintenance and repair; construction; electrical contracting; scientific facility construction; scientific facility maintenance and repair; laboratory maintenance; laboratory experiments; custodial services; and housekeeping services.

29. AUI and BSA extensively used TCE at BNL in the course of work, operations, services, research and other activities in numerous buildings, structures, facilities, and locations throughout the site.

30. AUI and BSA extensively used TCE at BNL as work supplies and materials given to computer operators, computer network technicians, information technology technicians, electronic technicians, telephone technicians, telecommunications technicians, machinists, metalworkers, scientific facility technicians, electricians, construction laborers, riggers, custodians and housekeepers for use in their customary, habitual and routine work activities, responsibilities and duties.

31. AUI and BSA extensively used TCE at BNL as work supplies and materials dispensed to workers who were employees, contractors and/or subcontractors.

32. AUI and BSA extensively purchased, ordered, delivered, stored, dispensed and used TCE at BNL that was manufactured, distributed, and sold by ZEP in aerosol, spray, liquid and bulk form.

33. AUI and BSA extensively purchased, ordered, delivered, stored, dispensed and used TCE at BNL that was manufactured, distributed, and sold by ZEP in the form of aerosol cans/bottles, spray cans/bottles, bottled liquids, 55 gallon drums/barrels and liquid bulk deliveries for tank storage.

34. AUI and BSA discharged, released, discarded and disposed of TCE after use in sink, basin and floor drains, sewers, septic sewer system, sewer pipes, cesspools, soils, trenches, shafts, holes, discharge basins and landfills.

35. TCE was well known to be toxic to humans in the 1950's.

36. TCE was banned from use in food and pharmaceutical production in most developed nations by the 1970's.

37. TCE was considered a probable and/or suspected human carcinogen by the 1970's.

38. TCE was determined to be a known human carcinogen by the federal government in 2016.

39. The vast majority of the TCE products used by AUI and BSA at BNL during the time plaintiffs worked there were manufactured, distributed, and sold by ZEP.

**ZEP'S TCE Products Were Dangerously Defective and Not Reasonably Safe**

40. The ZEP TCE products purchased by AUI and BSA for use at BNL were not reasonably safe to users, including plaintiffs HOBSON and DUSEK.

41. The ZEP TCE products purchased by AUI and BSA for use at BNL presented an

unreasonable risk of harm to users, including plaintiffs HOBSON and DUSEK.

## ZEP'S Failures to Provide Proper & Adequate Warnings
## About the Dangers of its TCE Products

42. The ZEP TCE products purchased by AUI and BSA for use at BNL did not have proper and adequate warnings to users, including HOBSON and DUSEK about the hazards, dangers, and risks to human health, safety and welfare presented by these products including the risks of carcinogenicity, toxicity, injury and illness.

## ZEP'S Failures to Provide Proper & Adequate Instructions
## About the Safe Use of its TCE Products

43. The ZEP TCE products purchased by AUI and BSA for use at BNL did not have proper and adequate instructions to users, including HOBSON and DUSEK, about the safe use, handling, storage, discharge, release, discarding and disposal of these products.

## JERRY HOBSON's TCE Exposure at BNL and its Consequences

44. JERRY HOBSON worked at Brookhaven National Laboratory as a custodian and rigger.

45. HOBSON was employed by AUI at BNL during the period 1973 - 1998.

46. HOBSON was employed by BSA at BNL during the period 1998 - 2009.

47. HOBSON regularly used ZEP TCE products in the course of his BNL work duties as a cleaning and degreasing solvent.

48. HOBSON also worked in proximity to other BNL workers using ZEP TCE products.

49. HOBSON also worked in locations at BNL that were polluted and contaminated with ZEP TCE products.

50. During the course of his work duties at BNL, HOBSON was exposed to hazardous, dangerous and unsafe levels of TCE exposure through the routes of inhalation, trans-dermal contact, ingestion, and vapor intrusion in the ambient air.

51. HOBSON was diagnosed with end stage renal failure, i.e., kidney failure in 2015.

52. HOBSON underwent a kidney transplant in 2015.

53. HOBSON remains subject to a risk of recurrence for kidney failure and other complications.

54. HOBSON's TCE exposure at BNL caused, contributed to and was a substantial factor resulting in his kidney failure and its related consequences.

### FRANK DUSEK's TCE Exposure at BNL and its Consequences

**55.** FRANK DUSEK worked at Brookhaven National Laboratory as a technician.

56. DUSEK was employed by AUI at BNL during the period 1970 - 1998.

57. DUSEK was employed by BSA at BNL during the period 1998 - 2014.

58. DUSEK regularly used ZEP TCE products in the course of his BNL work duties as a cleaning and degreasing solvent.

59. DUSEK also worked in proximity to other BNL workers using ZEP TCE products.

60. DUSEK also worked in locations at BNL that were polluted and contaminated with ZEP TCE products.

61. During the course of his work duties at BNL, DUSEK was exposed to hazardous, dangerous and unsafe levels of TCE exposure through the routes of inhalation, trans-dermal contact, ingestion, and vapor intrusion in the ambient air.

62. DUSEK was diagnosed with renal clear cell carcinoma, i.e., kidney cancer, in March 2019.

63. DUSEK underwent a partial nephrectomy to remove the cancer in 2019.

64. DUSEK remains subject to a risk of recurrence for kidney cancer.

65. DUSEK's TCE exposure at BNL caused, contributed to and was a substantial factor resulting in his kidney cancer and its related consequences.

## **TCE Toxicity & Carcinogenicity**

66. TCE is classified and accepted as a "known human carcinogen".

67. TCE is also a toxic substance hazardous to human health in other ways.

68. Numerous comprehensive studies appearing in peer reviewed scientific journals demonstrate that TCE can cause, contribute to, and result in kidney cancer, liver cancer, non-Hodgkins lymphoma, esophageal cancer, kidney failure, chronic kidney disease, liver failure, central nervous system disorders, and other organ and tissue injuries and damage.

69. TCE was declared a known human carcinogen according to the U.S. EPA, NIH/NIEHS, National Toxicity Program (NTP), U.S. HHS Agency for Toxic Substances and Disease Registry (USHHS-ATSDR), U.N. World Health Organization, and WHO International Association for Research on Cancer (IARC) during the years 2011 – 2016.

70. TCE is classified and accepted as a "known human carcinogen" and a toxic substance hazardous to human health by agencies of the U.S. government, W.H.O. International Association of Research on Cancer and a broad consensus of knowledgeable experts in the fields of science and medicine.

71. In order of magnitude, pathogenic TCE exposure routes are inhalation, trans-dermal contact, ingestion, and vapor intrusion into enclosed structures.

72. TCE causes, contributes to, and results in cancers and organ and tissue injury, dysfunction and damage.

73. The exposure to ZEP's ultra-hazardous, hazardous and/or dangerous TCE products caused, contributed to and was a substantial factor resulting in the injuries, illnesses, harm, losses and damages sustained by HOBSON and DUSEK.

## FIRST CAUSE OF ACTION: NEGLIGENCE

74. Plaintiffs repeat, re-allege and reiterate each and every allegation contained in paragraphs numbered "1" through "73" of the Complaint and incorporates them by reference as if fully repeated, re-alleged and reiterated in this paragraph.

75. ZEP owed a duty of reasonable care to users, including plaintiffs HOBSON and DUSEK, to manufacture, market, distribute, sell and place into the stream of commerce TCE products that could be used in a reasonably safe manner.

76. ZEP owed a duty of reasonable care to users, including plaintiffs HOBSON and DUSEK, to manufacture, market, distribute, sell and place into the stream of commerce TCE products that did not subject people to an unreasonable risk of harm.

77. ZEP owed a duty of reasonable care to users, including plaintiffs HOBSON and DUSEK, to properly and adequately provide warnings about the inherent hazards, dangers and/or risks of its TCE products to human health, safety and welfare.

78. ZEP owed a duty of reasonable care to users, including plaintiffs HOBSON and DUSEK, to properly and adequately instruct, educate and inform users about the inherent hazards, dangers and/or risks of its TCE products to human health, safety and welfare.

79. ZEP owed a duty of reasonable care to users, including plaintiffs HOBSON and DUSEK, to provide users with instructions for the proper and safe use, handling, storage, discharge, release, discarding and disposal of its TCE products.

80. ZEP breached and violated its duties to plaintiffs HOBSON and DUSEK to manufacture, market, distribute, sell and place into the stream of commerce TCE products that they could use in a reasonably safe manner.

81. ZEP breached and violated its duties to plaintiffs HOBSON and DUSEK to manufacture,

market, distribute, sell and place into the stream of commerce TCE products that did not subject them to an unreasonable risk of harm.

82. ZEP breached and violated its duties to plaintiffs HOBSON and DUSEK to properly and adequately provide warnings to them about the inherent hazards, dangers and/or risks of its TCE products to human health, safety and welfare.

83. ZEP breached and violated its duties to plaintiffs HOBSON and DUSEK to properly and adequately instruct, educate and inform them about the inherent hazards, dangers and/or risks of its TCE products to human health, safety and welfare.

84. ZEP breached and violated its duties to plaintiffs HOBSON and DUSEK to properly and adequately provide instructions to them about the proper and safe use, handling, storage, discharge, release, discarding and disposal of these products.

85. ZEP negligently failed to manufacture, market, distribute, sell and place into the stream of commerce TCE products that could be used by plaintiffs HOBSON and DUSEK in a reasonably safe manner.

86. ZEP negligently failed to manufacture, market, distribute, sell and place into the stream of commerce TCE products that did not subject plaintiffs HOBSON and DUSEK to an unreasonable risk of harm.

87. ZEP negligently failed to properly and adequately provide warnings to plaintiffs HOBSON and DUSEK about the inherent hazards, dangers and/or risks of its TCE products to human health, safety and welfare.

88. ZEP negligently failed to properly and adequately instruct, educate and inform plaintiffs HOBSON and DUSEK about the inherent hazards, dangers and/or risks of its TCE products to human health, safety and welfare.

89. ZEP negligently failed to properly and adequately provide instructions to plaintiffs HOBSON and DUSEK and others for the proper and safe use, handling, storage, discharge, release, discarding and disposal of those products.

90. ZEP's foregoing negligence caused, contributed to and was a substantial factor resulting in injuries, illnesses, harm, losses and damages sustained by plaintiffs HOBSON and DUSEK.

91. Plaintiffs HOBSON and DUSEK also sustained conscious pain and suffering, grave injuries, loss of function of an organ, sequelae, recurrence risks, worsened prognosis, decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, and loss of enjoyment of life.

92. Plaintiffs HOBSON and DUSEK were also caused to undergo extensive medical treatment.

93. Plaintiffs HOBSON and DUSEK also sustained the expenses and costs of the medical treatment and other economic losses.

94. The injuries, illnesses, harm, losses and damages sustained by plaintiffs HOBSON and DUSEK were caused solely and wholly by virtue of the foregoing negligent acts, omissions and conduct of ZEP and were in no way caused and/or contributed to by the plaintiffs.

95. As a result of the negligence of ZEP, plaintiffs HOBSON and DUSEK have been damaged in an amount in excess of the sum specified by *28 U.S.C. §1332* (*i.e.:* $75,000.00).

96. By reason of the foregoing, plaintiffs HOBSON and DUSEK are entitled to monetary damages from defendants ZEP for their non-economic and economic injuries that exceed the sum specified by *28 U.S.C. §1332* (*i.e.:* $75,000.00).

97. By reason of the foregoing, plaintiff JERRY HOBSON demands judgment against defendant in the amount of $25,000,000.00 in damages.

98. By reason of the foregoing, plaintiff FRANK DUSEK demands judgment against defendants

in the amount of $25,000,000.00 in damages.

## SECOND CAUSE OF ACTION:
## STRICT PRODUCTS LIABILITY FOR
## DANGEROUSLY DEFECTIVE PRODUCTS

99. Plaintiffs repeat, re-allege and reiterate each and every allegation contained in paragraphs numbered "1" through "98" of the Complaint and incorporates them by reference as if fully repeated, re-alleged and reiterated in this paragraph.

100. ZEP manufactured, marketed, distributed, sold and/or placed into the stream of commerce the TCE products used at BNL by plaintiffs HOBSON and DUSEK and others.

101. ZEP owed a duty to users of its TCE products, including plaintiffs HOBSON and DUSEK, to manufacture, market, distribute, sell and/or place into the stream of commerce products that were reasonably safe.

102. ZEP owed a duty to users of its TCE products, including plaintiffs HOBSON and DUSEK, to manufacture, market, distribute, sell and/or place into the stream of commerce products that did not subject them to an unreasonable risk of harm.

103. ZEP breached and violated their duty to plaintiffs HOBSON and DUSEK to manufacture, market, distribute, sell and/or place into the stream of commerce TCE products that were reasonably safe.

104. ZEP breached and violated their duty to plaintiffs HOBSON and DUSEK to manufacture, market, distribute, sell and/or place into the stream of commerce TCE products that did not subject users to an unreasonable risk of harm.

105. ZEP manufactured, marketed, distributed, sold, supplied and/or placed into the stream of commerce TCE products that were not reasonably safe to the detriment of plaintiffs HOBSON and DUSEK.

106. ZEP manufactured, marketed, distributed, sold, supplied and/or placed into the stream of commerce TCE products that subjected plaintiffs HOBSON and DUSEK to an unreasonable risk of harm.

107. ZEP manufactured, marketed, distributed, sold, supplied and/or placed into the stream of commerce TCE products that were human carcinogens and/or ultra-hazardous, hazardous and dangerous to human health, safety and welfare.

108. Plaintiffs HOBSON and DUSEK sustained exposures to ZEP's TCE products that were sufficient to be carcinogenic and/or ultra-hazardous, hazardous and/or dangerous to their health, safety and welfare.

109. The foregoing hazards, dangers and risks presented by ZEP's TCE products to the health, safety and welfare of plaintiffs HOBSON and DUSEK were inherent, latent and not open or obvious.

110. BNL used, handled, stored, discharged, released, discarded and disposed of ZEP's TCE products in accordance with the intended and foreseeable uses of those products.

111. Plaintiffs HOBSON and DUSEK used ZEP's TCE products in accordance with the intended and foreseeable uses of those products.

112. ZEP is strictly liable for the manufacture, marketing, distribution, and/or sale of TCE products that were dangerously defective and not reasonably safe for use by plaintiffs HOBSON and DUSEK.

113. ZEP is strictly liable for placing into the stream of commerce TCE products that were dangerously defective and not reasonably safe for use by plaintiffs HOBSON and DUSEK.

114. ZEP is strictly liable for the manufacture, marketing, distribution, and/or sale of TCE products that presented an unreasonable risk of harm to plaintiffs HOBSON and DUSEK.

115. ZEP is strictly liable for placing into the stream of commerce TCE products that presented an unreasonable risk of harm to plaintiffs HOBSON and DUSEK.

116. ZEP's foregoing strict liability conduct caused, contributed to and was a substantial factor resulting in the injuries, illnesses, harm, losses and damages sustained by plaintiffs HOBSON and DUSEK.

117. Plaintiffs HOBSON and DUSEK also sustained conscious pain and suffering, recurrence risks, worsened prognosis, decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, and loss of enjoyment of life.

118. Plaintiffs HOBSON and DUSEK were also caused to undergo extensive medical treatment including surgeries, hospitalizations and diagnostic procedures.

119. Plaintiffs HOBSON and DUSEK also sustained the expenses and costs of the medical treatment and other economic losses.

120. The injuries, illnesses, harm, losses and damages sustained by plaintiffs HOBSON and DUSEK were caused solely and wholly by virtue of ZEP's foregoing acts, omissions and conduct and were in no way caused and/or contributed to by the plaintiffs.

121. As a result of ZEP's foregoing conduct, plaintiffs HOBSON and DUSEK have been damaged in an amount in excess of the sum specified by *28 U.S.C. §1332* (*i.e.:* $75,000.00).

122. By reason of the foregoing, plaintiffs HOBSON and DUSEK are entitled to monetary damages from defendants ZEP for their non-economic and economic injuries that exceed the sum specified by *28 U.S.C. §1332* (*i.e.:* $75,000.00).

123. By reason of the foregoing, plaintiff JERRY HOBSON demands judgment against defendant in the amount of $25,000,000.00 in damages.

124. By reason of the foregoing, plaintiff FRANK DUSEK demands judgment against

15

defendants in the amount of $25,000,000.00 in damages.

<b><u>THIRD CAUSE OF ACTION:<br>STRICT PRODUCTS LIABILITY FOR<br>FAILURE TO PROVIDE ADEQUATE<br>WARNINGS & INSTRUCTIONS</u></b>

125. Plaintiffs repeat, re-allege and reiterate each and every allegation contained in paragraphs numbered "1" through "124" of the Complaint and incorporates them by reference as if fully repeated, re-alleged and reiterated in this paragraph.

126. ZEP owed a duty to users of its TCE products, including plaintiffs HOBSON and DUSEK, to provide proper and adequate warnings about the inherent hazards, dangers and/or risks of these products.

127. ZEP owed a duty to users of its TCE products, including plaintiffs HOBSON and DUSEK, to provide proper and adequate instructions for the safe use, handling, storage, discharge, release, discard and disposal of these products.

128. ZEP breached and violated their duty to plaintiffs HOBSON and DUSEK to provide proper and adequate warnings about the inherent hazards, dangers and/or risks of these products.

129. ZEP breached and violated their duty to plaintiffs HOBSON and DUSEK to provide proper and adequate instructions about the safe use, handling, storage, discharge, release, discard and disposal of these products.

130. ZEP manufactured, marketed, distributed, sold, supplied and/or placed into the stream of commerce TCE products that did not provide proper and adequate warnings to users, including plaintiffs HOBSON and DUSEK, about the inherent hazards, dangers and/or risks of these products.

131. ZEP manufactured, marketed, distributed, sold, supplied and/or placed into the stream of

commerce TCE products that did not provide proper and adequate instructions to users, including plaintiffs HOBSON and DUSEK, about the safe use, handling, storage, discharge, release, discard and disposal of these products.

132. ZEP's TCE products were human carcinogens and/or ultra-hazardous, hazardous and dangerous to human health, safety and welfare.

133. Plaintiffs HOBSON and DUSEK sustained exposures to ZEP's TCE products that were sufficient to be carcinogenic and/or ultra-hazardous, hazardous and/or dangerous to their health, safety and welfare.

134. The foregoing hazards, dangers and risks presented by ZEP's TCE products to the human health, safety and welfare of plaintiffs HOBSON and DUSEK were inherent, latent and not open or obvious.

135. BNL used, handled, stored, discharged, released, discarded and disposed of ZEP's TCE products in accordance with the warnings and instructions for those products.

136. Plaintiffs HOBSON and DUSEK used ZEP's TCE products in accordance with the warnings and instructions for those products.

137. ZEP is strictly liable for the failure to provide proper and adequate warnings to plaintiffs HOBSON and DUSEK about the inherent hazards, dangers and/or risks of its TCE products.

138. ZEP is strictly liable for the failure to provide proper and adequate instructions to plaintiffs HOBSON and DUSEK about the safe use, handling, storage, discharge, release, discard and disposal of its TCE products.

139. ZEP's foregoing strict liability conduct caused, contributed to and was a substantial factor resulting in the injuries, illnesses, harm, losses and damages sustained by plaintiffs HOBSON and DUSEK.

140. Plaintiffs HOBSON and DUSEK also sustained conscious pain and suffering, recurrence risks, worsened prognosis, decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, and loss of enjoyment of life.

141. Plaintiffs HOBSON and DUSEK were also caused to undergo extensive medical treatment, including surgeries, hospitalizations and diagnostic procedures.

142. Plaintiffs HOBSON and DUSEK also sustained the expenses and costs of the medical treatment and other economic losses.

143. The injuries, illnesses, harm, losses and damages sustained by plaintiffs HOBSON and DUSEK were caused solely and wholly by virtue of the foregoing strict liability acts, omissions and conduct of ZEP and were in no way caused and/or contributed to by the plaintiffs.

144. As a result of the ZEP's strict liability conduct, plaintiffs HOBSON and DUSEK have been damaged in an amount in excess of the sum specified by *28 U.S.C. §1332* (*i.e.:* $75,000.00).

145. By reason of the foregoing, plaintiffs HOBSON and DUSEK are entitled to monetary damages from defendants ZEP for their non-economic and economic injuries that exceed the sum specified by *28 U.S.C. §1332* (*i.e.:* $75,000.00).

146. By reason of the foregoing, plaintiff JERRY HOBSON demands judgment against defendant in the amount of $25,000,000.00 in damages.

147. By reason of the foregoing, plaintiff FRANK DUSEK demands judgment against defendants in the amount of $25,000,000.00 in damages.

**WHEREFORE,** plaintiffs JERRY HOBSON and FRANK DUSEK each demand judgment awarding monetary damages on the first, second, and third causes of action in the Complaint in an amount totaling $25,000,000.00 for each plaintiff; and the plaintiffs demand the interest, costs and disbursements of this action.

Dated: New York, New York
July 7, 2020

Yours, etc.,

*/s/ J. Lanni*
_____
**JOSEPH LANNI**
THE JACOB FUCHSBERG LAW FIRM, LLP
Attorneys for Plaintiffs
3 Park Avenue, 37th Floor
New York, New York 10016
Tel.: 212.869.3500
Fax: 212.398.1532
j.lanni@fuchsberg.com